By the Couet.
Duee, J.
We cannot agree with tbe learned referee in tbe construction wbicb be has given to the agreement which-was so dearly proved, and wbicb be admits to have been proved, on tbe part of tbe defendants, nor can we regard tbe variance between tbe agreement thus proved and that set forth in tbe answer, as at all material. In our judgment, tbe defence set up in tbe answer was fully established.
We think that tbe plaintiff, by agreeing “ to keep up tbe building and leave it well supported” bound himself to supply and use all tbe means necessary to tbe accomplishment of tbe end; and consequently that tbe agreement, although not in express words, yet by its legal and fair interpretation, bound him to furnish tbe necessary materials, as well as perform tbe necessary work. He was to keep up and support tbe building. If this could be done by human labor alone, it was work only that be contracted to perform; but if it could not be done without tbe use of beams and piles, be agreed just as certainly to furnish them, as to perform tbe work. Tbe job wbicb, in tbe language of mechanics, be undertook to finish, was entire, and tbe supply of tbe necessary materials as truly a component part of it, as tbe supply of *41 tbe necessary labor. An agreement to keep up a building which is in danger of falling, bears a close analogy to a covenant to make all necessary repairs, which it has never been doubted, imports an obligation to furnish all the materials that the repairs may require.
Not only is this the construction of the agreement, which in our opinion its words suggest, but we cannot doubt that it was in this sense that it was understood by the parties when it was made. The witness who formed the agreement says that in the conversation of the parties nothing was said about lumber. But if the use of lumber to keep up the building was known to be necessary, and the words of the agreement were understood to comprehend its use, nothing more was necessary to be said; while, on the other hand, if the understanding of the parties was that the defendants should furnish all the materials that the plaintiff might deem it necessary to use, and that the price should be added to the $200 which they stipulated to pay, this understanding was an essential part of their agreement, and we cannot but think would have been expressed in its terms. The silence of the parties, it seems to us, is nearly conclusive proof that such was not and- could not have been their understanding. Had such been the obligation of the defendants, it was plainly just as proper and necessary to be stated as that of the plaintiff; the witness, however, swears that his memorandum comprehended the whole of their verbal agreement.
Again: we think the evidence shows that the plaintiff acted himself upon that construction of his agreement which we adopt. All the timber and other lumber that was used was furnished by the plaintiff himself, or the persons whom he employed, without any previous request of the defendants; for unless such requfest is to be implied from their engaging him to perform the job, none has been shown or is pretended. But if his agreement, as is supposed by the referee, was simply to perform the necessary work, this certainly gave him no authority to supply or purchase the necessary materials, thus taking from the defendants the exercise of their own judgment as to their quality, necessity, and price; if he was not bound to furnish and pay for the necessary materials, they were, and if so, he had plainly no right, without their authority or consent, to furnish or purchase them *42 himself. Hence, in the case before us, which purports to contain all the evidence that was given, the allegation in the complaint, that the plaintiff sold and delivered to the defendants at their request the materials in question, is wholly unsustained by proof. Unless he believed that his agreement bound him to furnish the materials, his doing so was a purely voluntary act, which, without evidence of a prior request, or its subsequent adoption, created no liability on the part of the defendants. The reasonable inference, we think, is, that he acted on the belief that has been stated, since it is this belief alone that furnishes a reasonable explanation of his conduct. If such was not his motive, it still remains true, that upon the evidence before us he has no right to charge the defendants with the cost or value of materials, from the use of which they derived no benefit, and which they neither agreed to purchase n@r authorized him to purchase.
It is said, however, that the construction of the agreement which we adopt does not remove the objection that there is a material variance between the agreement stated in the answer and that established by the proof. The agreement as stated in the answer is absolute, while that proved gave to the defendants the right of stopping the work, and discharging the plaintiff whenever they pleased, thus depriving him of the right of earning by completing the work, the whole sum stipulated to be paid. We think there is no weight in the objection, for although it is true that the answer contains no mention of the provision giving to the defendants the privilege of stopping the work, it is equally so that the omission is wholly unimportant. It is unimportant for the plain reason that it is an omission of a part of the agreement which did not and could not affect or vary in the slightest degree the obligation which the residue imposed upon the plaintiff. Such an omission is not a variance. The defendants were not bound to set forth the whole agreement. It was sufficient to set forth that portion of it which was necessary to be proved upon the trial, in order to sustain their defence, and the construction of which could not be affected by that which was omitted, and this they have done. The answer says that the plaintiff agreed to support and keep up the defendants’ building, and to furnish all the necessary materials therefor, for the price of $200, and that this agreement he failed to perform. Such was his *43 agreement as we construe it, and tbe evidence shows that it was not performed. Where then is the variance ?
There is another view of the case which was pressed upon our attention by the counsel for the defendants, which we held, upon consideration, to be equally fatal to the plaintiff’s right o frecovery; certainly to his right to recover the whole sum for which the judgment has been rendered. Let it be admitted that the plaintiff in agreeing to keep up the building and leave it well supported, agreed only to perform the necessary work; it is certain that until and unless this work should be performed, he was not to be entitled to receive its stipulated price; in other words, his performance of the whole work was a condition precedent to his right to demand a payment for any portion of it. But he did not perform the work; he did not keep up the building and leave it well supported. He abandoned the work, when, according to the testimony of his principal witness, half the job was uncompleted. It has not been shown, nor is it pretended, that his abandonment of the work was justified or excused by any act or default of the defendants. From whatever cause it proceeded it was his own voluntary act. He could not have left the braiding well supported, for when he left it, one half of the work deemed necessary to its support remained to be done; and when the whole was done, the whole was ineffectual. The building fell and was destroyed. If any principle in the law of contracts is well settled, it is, that when a plaintiff seeks to recover for work done upon a quantum meruit, the existence and non-performance of a special contract covering the work are a bar to the action, unless it appears that his performance was waived or his non-performance excused. Then as the contract and its breach are proved, and no waiver or excuse is shown, upon what ground can the plaintiff be entitled to recover ? As we understand the law, there is none.
That he cannot be entitled to recover for his work this view of the case is conclusive to show, and that even upon the same limited construction of his agreement, he is not entitled to recover for the materials he used, has already been shown.
But we are told that if the plaintiff agreed only to perform the necessary work and not to furnish the materials, the variance between the answer and the proof is manifest and fetal. That upon *44 this supposition there is variance cannot be denied, but that under the provisions of the Code, even this variance is to be regarded as material we are far from conceding. It is not a variance that affects the substance of the defence.
The substance of the defence is, that there was a special agreement applicable to the plaintiff’s demand which he had .violated. Such an agreement was proved, and we apprehend it is no objection to the proof that a broader agreement was stated in the answer.
The Court of Appeals has instructed us by its decision in Catlin v. Gunter, (1 Kernan, 368,) that when a special agreement is set up as a defence in an answer, and is proved in its substance upon the trial, a variance in the proof from its particular terms and not from its entire scope and meaning, not only may, but must be disregarded. It is to be deemed and treated as immaterial.
We do not doubt that according to- the technical rules of pleading that formerly prevailed,, the variances upon which the referee and the counsel for the plaintiff have relied, would be adjudged to be fatal. But the Code has abolished all rules of pleading that are merely technical, and under its liberal and benign provisions, it is only those that the interests of* truth and-justice require to be observed that must govern our decisions. Such is now the law, and for ourselves we rejoice that it is so. Whatever may be the defects of the Code, it has at least effected the reform that Lord Mansfield desired. Let its provisions be faithfully executed, and justice will no more “be entangled in the net of form.”
That the agreement which the plaintiff in the case before us made with the defendants was, as his counsel argued, a very imprudent one we do not doubt, nor do we doubt that it was because he found it to be so that he abandoned its performance, but we cannot relieve him from the consequences of a losing bargain, by charging the defendants with the payment of a sum which they never contracted to pay, and for the payment of which, upon no ground of law or equity ought they to be liable. By the terms of his agreement he took upon himself the risk of a loss, and the loss that followed he must be content to bear.
The judgment in his favor is therefore reversed, and a new trial ordered, with costs to abide the event.